%JS 44   (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Bruce Aristeo

**(b)** County of Residence of First Listed Plaintiff   Burlington

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Mark J. Molz, Esquire          (609) 267-8884
Law Office of Mark J. Molz     (609) 267-1281
1400 Route 38                  molzlaw@aol.com
P.O. Box 577
Hainesport, NJ 08036

## DEFENDANTS
Jody Raines; WebMarCom; and/or John Does 1-10, individually, jointly & severally

County of Residence of First Listed Defendant   Camden

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

❏ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
❏ 2  U.S. Government Defendant
❏ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
❏ 110 Insurance
❏ 120 Marine
❏ 130 Miller Act
❏ 140 Negotiable Instrument
❏ 150 Recovery of Overpayment & Enforcement of Judgment
❏ 151 Medicare Act
❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
❏ 153 Recovery of Overpayment of Veteran's Benefits
❏ 160 Stockholders' Suits
❏ 190 Other Contract
❏ 195 Contract Product Liability
❏ 196 Franchise

### REAL PROPERTY
❏ 210 Land Condemnation
❏ 220 Foreclosure
❏ 230 Rent Lease & Ejectment
❏ 240 Torts to Land
❏ 245 Tort Product Liability
❏ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
❏ 310 Airplane
❏ 315 Airplane Product Liability
❏ 320 Assault, Libel & Slander
❏ 330 Federal Employers' Liability
❏ 340 Marine
❏ 345 Marine Product Liability
❏ 350 Motor Vehicle
❏ 355 Motor Vehicle Product Liability
❏ 360 Other Personal Injury

**PERSONAL INJURY**
❏ 362 Personal Injury - Med. Malpractice
❏ 365 Personal Injury - Product Liability
❏ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
❏ 370 Other Fraud
❏ 371 Truth in Lending
❏ 380 Other Personal Property Damage
❏ 385 Property Damage Product Liability

### CIVIL RIGHTS
❏ 441 Voting
❏ 442 Employment
❏ 443 Housing/ Accommodations
❏ 444 Welfare
❏ 445 Amer. w/Disabilities - Employment
❏ 446 Amer. w/Disabilities - Other
❏ 440 Other Civil Rights

### PRISONER PETITIONS
❏ 510 Motions to Vacate Sentence
**Habeas Corpus:**
❏ 530 General
❏ 535 Death Penalty
❏ 540 Mandamus & Other
❏ 550 Civil Rights
❏ 555 Prison Condition

### FORFEITURE/PENALTY
❏ 610 Agriculture
❏ 620 Other Food & Drug
❏ 625 Drug Related Seizure of Property 21 USC 881
❏ 630 Liquor Laws
❏ 640 R.R. & Truck
❏ 650 Airline Regs.
❏ 660 Occupational Safety/Health
❏ 690 Other

### LABOR
❏ 710 Fair Labor Standards Act
❏ 720 Labor/Mgmt. Relations
❏ 730 Labor/Mgmt.Reporting & Disclosure Act
❏ 740 Railway Labor Act
❏ 790 Other Labor Litigation
❏ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
❏ 462 Naturalization Application
❏ 463 Habeas Corpus - Alien Detainee
❏ 465 Other Immigration Actions

### BANKRUPTCY
❏ 422 Appeal 28 USC 158
❏ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☒ 820 Copyrights
❏ 830 Patent
❏ 840 Trademark

### SOCIAL SECURITY
❏ 861 HIA (1395ff)
❏ 862 Black Lung (923)
❏ 863 DIWC/DIWW (405(g))
❏ 864 SSID Title XVI
❏ 865 RSI (405(g))

### FEDERAL TAX SUITS
❏ 870 Taxes (U.S. Plaintiff or Defendant)
❏ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
❏ 400 State Reapportionment
❏ 410 Antitrust
❏ 430 Banks and Banking
❏ 450 Commerce
❏ 460 Deportation
❏ 470 Racketeer Influenced and Corrupt Organizations
❏ 480 Consumer Credit
❏ 490 Cable/Sat TV
❏ 810 Selective Service
❏ 850 Securities/Commodities/ Exchange
❏ 875 Customer Challenge 12 USC 3410
❏ 890 Other Statutory Actions
❏ 891 Agricultural Acts
❏ 892 Economic Stabilization Act
❏ 893 Environmental Matters
❏ 894 Energy Allocation Act
❏ 895 Freedom of Information Act
❏ 900 Appeal of Fee Determination Under Equal Access to Justice
❏ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
❏ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from another district (specify)
❏ 6 Multidistrict Litigation
❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
504(c)(1)
Brief description of cause:
Breach of Contract, Copyright Infringement and other actions

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ❏ No

## VIII. RELATED CASE(S)
(See instructions):   JUDGE _____   DOCKET NUMBER  DC-4177-11

Explanation:  Client filed Pro Se in Special Civil Part-Camden County Superior Court

DATE   07/21/2011

SIGNATURE OF ATTORNEY OF RECORD   Mark J. Molz

4247

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRUCE ARISTEO                          :
                                       :    Civil Action No.    RECEIVED
                                       :
                        Plaintiffs,    :         (Jury)         JUL 22 2011
                                       :                        AT 8:30_____ N°
                                       :                        WILLIAM T. WALSH
        vs.                            :                             CLERK
                                       :
                                       :    **COMPLAINT**
                                       :    **WITH JURY DEMAND**
JODY RAINES, WEBMARCOM; and/or         :    **DISCOVERY REQUESTS**
JOHN DOES 1-10; individually, jointly &:
severally,                             :
                                       :
                        Defendants.    :
                                       :

        Bruce Aristeo residing at 37 North Maple Avenue, Township Evesham, County of

Burlington, State of New Jersey by way of Complaint states:

### JURISDICTION

1.  The United States District Court has original Jurisdiction over enforcement of The

    Copyright Act .

2.  The Parties reside in the State of New Jersey.

### COUNT 1

3.  At all relevant times, Jody Raines resided at 3 Bradford Way, Township of

    Voorhees, County of Camden, State of New Jersey.

4.  At all relevant times, the Defendant WebMarCom, LLC was a business owned

    and operated by Jody Raines at her home address of 3 Bradford Way, Township

    of Voorhees, County of Camden, State of New Jersey.

5. John Doe 1-10 is a fictitious designation for a person or business entity whose act or omission in some way contributed to the losses and damages of Plaintiff as set forth below.

6. The principal is responsible for the acts or omissions of its agent, servants or assigns.

7. On or about November 12, 2010, the Defendant Jody Raines sent various electronic transmissions to the Plaintiff Bruce Aristeo stating:

> ...looks like we have the job...he confirmed the meeting for 4:00 p.m...is this something you may be interested in working on. (Exhibit 1).

8. This reference is made to employment by Jody Raines and WebMarCom of Plaintiff Bruce Aristeo.

9. Bruce Aristeo was asked by the Defendants Jody Raines and for WebMarCom, LLC to utilize creative talents, to create new websites and to update and improve existing websites with original thought and intellectual property.

10. The general contract of the Defendant (Exhibit 2) demonstrates that at all relevant times the Defendants Jody Raines and/or WebMarCom, LLC considered Plaintiff Bruce Aristeo to be the designer that's described in the contract with the intended privileges of copyright protection as set forth in the Print and New Media Design Trade Customs which two-page document is attached to the contract of the Defendants as Pages 5 and 6.

11. The Defendants Jody Raines individually and WebMarCom, LLC agreed to pay Plaintiff Bruce Aristeo to perform various duties at either paid an hourly rate or paid at 50% of the project quote.

12. Payments were made by Defendants Jody Raines individually and WebMarCom, LLC to Plaintiff Bruce Aristeo upon outstanding balances but there remains due and owing approximately $12,500. (Copy of one check and one Email evidencing these payments attached as Exhibits 3A, 3B and 3C).

13. The Defendants Jody Raines and WebMarCom, LLC and/or John Doe 1-10 breached her/their contract with the Plaintiff Bruce Aristeo by failing to pay him for the work that he performed either on an hourly basis or on a 50% of revenue basis causing Plaintiff Bruce Aristeo damages, estimated at about $12512.50. (Exhibit 4).

Wherefore, Plaintiff Bruce Aristeo demands Judgment against Defendants Jody Raines and WebMarCom, LLC and/or John Doe 1-10 for (a) compensatory damages; (b) attorney's fees; and (c) interest, (d) costs (e) Any other relief deemed equitable and just.

## COUNT TWO

14. The allegations contained in each paragraph of all preceding Counts are repeated and incorporated herein as though set forth at length.

15. The work created by Plaintiff Bruce Aristeo included original thought, intellectual property, designs, graphics and sales copy that are protected by the Copyright Act of 1976 (Exhibit 5).

16. The Defendants used a general form of contract with clients an example of which is attached hereto as Exhibit 2 and states:

> "WebMarCom, LLC referred to here as "Design Firm" and Bruce Aristeo referred to as "Designer" will plan, design and code a web site for the individual or corporation named above, referred in this document as "Client" to the specifications in the attached SITE SPECIFICATION". (Exhibit 2, Paragraph 1).

3

17. Breach of the Copyright Act entitles the Plaintiff to statutory damages not less than $750 nor more of $30,000 under 504(c)(1). (Exhibit 7).

18. The Defendants Jody Raines and WebMarCom, LLC and/or John Doe 1-10 breached the Copyright Act by inducing Plaintiff Bruce Aristeo to create Intellectual property and by distributing Plaintiff's work product to customers for compensation without the permission of Plaintiff and/or without the agreed upon compensation.

Wherefore, Plaintiff Bruce Aristeo demands judgment against the Defendant Jody Raines and/or WebMarCom, LLC and/or John Does 1-10 individually, jointly and severally for (a) statutory fine (b) double damages (c) punitive damages; (d) compensatory damages, (e) attorney's fees; (f) interest, (g) costs.

### COUNT THREE

19. The allegations contained in each paragraph of all preceding Counts are repeated and incorporated herein as though set forth at length.

20. Bruce Aristeo operates a design/intellectual property fledgling business known as AB to BC, LLC located at 1640 Nixon Drive, Suite 272, Moorestown, New Jersey 08057.

21. The Defendant Jody Raines individually has contacted various entities and individuals in the related industries which have infringed upon the Plaintiff's right to conduct business in a free and fair way.

22. Specifically, Jody Raines called the Camden County Chamber of Commerce and instructed them that Bruce Aristeo was not to attend an event where she was to be a speaker.

23. This meeting is important to Plaintiff's business interests because of the beneficial contacts acquired there.

24. Plaintiff was accepted into the South Jersey Business Networking Group which is a membership driven organization consisting of about 200 business owners and entrepreneurs.

25. Plaintiff received a notice on 4/20/2011 from  South Jersey Business Networking Group and the organizer admitted that Plaintiff was blocked after Andrew Young received information from Jody Raines. (Exhibit 8).

26. Jody Raines also blocked Bruce Aristeo from the Camden County Chamber of Commerce Facebook page. (Exhibit 9).

27. Jody Raines also blocked Bruce Aristeo from the "Linked In" networking group that is part of the Camden County Chamber of Commerce. (Exhibit 10)

28. This interference by Jody Raines constitutes outrageous conduct and is intolerable in a civilized society.

29. Jody Raines is motivated by malice in each of her actions relating to Bruce Aristeo.

30. As a direct and proximate result of the Intentional Interference with Plaintiff's prospective advantage by Defendants Jody Raines, WebMarCom, LLC and/or John Doe 1-10, Plaintiff Bruce Aristeo has suffered damages and losses.

Wherefore, Plaintiff Bruce Aristeo demands judgment against the Defendant Jody Raines and/or WebMarCom, LLC and/or John Does 1-10 individually, jointly and severally for (a) punitive damages; (b) compensatory damages, (c) attorney's fees; (d) interest, (e) costs.

MARK J. MOLZ, ESQUIRE
ATTORNEY for Plaintiff

Dated:     July 21, 2011     By:     _____

Mark J. Molz, Esquire
1400 Route 38 East, Box 577
Hainesport, New Jersey 08036
(609) 267-8884
molzlaw@aol.com
FEDERAL I.D. NO. MM5805

## JURY DEMAND
Plaintiff(s) hereby demand a trial by Jury for all issues so triable.

## DESIGNATION OF TRIAL COUNSEL
*Mark J. Molz, Esquire* is hereby designated as Trial Counsel for Plaintiff(s) in connection with this litigation.

## NOTICE OF PER DIEM TIME-UNIT CLOSING ARGUMENT
PLEASE TAKE NOTICE that Plaintiff(s) will use per diem argument during closing argument at Trial and suggest to Jury that unliquidated damages be calculated on a time-unit basis without reference to a specific sum. Proper explanatory instructions to jury shall be requested.

## CERTIFICATION OF OTHER ACTIONS AND PARTIES
The undersigned hereby certifies that the matter in controversy was previously the subject of a Special Civil Part Action filed in the Camden County Superior Court by Bruce Aristeo against Jody Raines under DC-4177-11.. In addition, Bruce Aristeo asked the Court to transfer that matter to Law Division, which motion has not yet been heard. No other docket numbers are known.

## DEMAND FOR DISCOVERY
Plaintiff hereby demands that answering defendant respond to the Notice of Deposition, Request for Production of Documents and Interrogatories that follow.

MARK J. MOLZ, ESQUIRE
ATTORNEY for Plaintiff

Dated:     July 21, 2011     By:     _____

Mark J. Molz, Esquire
1400 Route 38 East, Box 577
Hainesport, New Jersey 08036
(609) 267-8884
molzlaw@aol.com
FEDERAL I.D. NO. MM5805

## NOTICE OF DEPOSITION
## OF ANSWERING DEFENDANT

Pursuant to the FRCP 30, Plaintiff(s) hereby demand that the answering party (or, if answering party is a non-individual entity, answering party's designated representative most knowledgeable of the circumstances described in the pleadings) appear at the Law Offices of Mark J. Molz, 1400 Route 38 East, Hainesport, New Jersey at 10:00 a.m. on the 35th day following service of this Summons and Complaint, at which time said deponent(s) shall give testimony by Deposition upon oral examination before a person authorized by the laws of the State of New Jersey to administer oaths, and shall produce originals (or true copies if originals unavailable) of all documents and things requested in the attached Request for Production of Documents, and shall provide full and complete answers to all Interrogatories propounded herein. Answering party is required to contact the Law Offices of Mark J. Molz at (609) 267-8884 prior to the date of deposition to confirm appearance. Failure to appear for Deposition in accordance with this Demand will subject answering party to penalties and sanctions as allowed by the New Jersey Court Rules. Failure to produce all requested documents and things, or failure to give complete answers to Interrogatories, at or before the Deposition will result in the Deposition being taken again after such responses are provided.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to FRCP 34 Plaintiff(s) hereby request and demand that answering party produce at the Law Offices of Mark J. Molz, 1400 Route 38 East, Box 577, Hainesport, NJ 08036 the following documents and things in the time and manner provided by New Jersey Court Rules and the Discovery Instructions and Definitions set forth below.

1.     True copies of all client's files, billings, collections, documents, materials, reports, photographs, drawings, videotapes, audio tapes, graphs, charts, statements, things affecting credibility, reproductions, surveillance, recordings, publications, learned treatises, authorities, exhibits or any other writing, object or thing that answering party will rely upon, present, offer or utilize at the time of Trial during direct examination, cross-examination or any other part of the Trial.

2.     True copies of all statements, admissions or testimony, whether written, oral, tape recorded, transcribed, video taped, digitalized, transcribed, or memorialized on any other medium, made by: (a) any party to this lawsuit; (b) any agent, representative, employee or assign of any party to this lawsuit; (c) any witness named in this lawsuit; or (d) any person with knowledge of facts pertaining to the subject matter of this lawsuit.

3.     True copies of the following materials from your expert witnesses, forensic examiners, investigators and independent medical examiners (each referred to herein as "said expert"):

a.     All reports rendered in this case by said expert.

b.     Updated curriculum vitae of said expert.

c.     All documents, statements, physical evidence and other things relied upon by said expert in forming an opinion.

d.     All documents, things, statements, correspondence (including letters from counsel or litigant), pleadings and other materials provided to said expert in this case whether or not same impacted on final opinion.

e.     All learned treatises, reports, statutes, codes, ordinances, rules, regulations or other published documents or authorities relied upon in forming an opinion or to be used at Trial by said expert.

f.     All blueprints, charts, diagrams, drawings, graphs, maps, plates, plans, photographs, models, video or audio recordings or other visual or audio reproductions of any object, place or thing relied upon in forming an opinion or to be used at Trial by said expert.

g.      All correspondence, bills or other materials sent by said expert to any attorney, insurer or litigant in this case.

h.      Said expert's entire file in this case. This request includes but is not limited to all prior or rough drafts of said expert's reports and all documents marked up or written on by said expert.

i.      All reports, deposition transcripts and publications of said expert in other matters.

4.      True copies of all information, writings, documents, things, etc. obtained in response to all subpoenas or authorizations served in this case.

5.      True and complete copies of all insurance agreements or policies (plus all related papers, addenda, declaration pages and notices of cancellation) under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse payments made to satisfy the judgment. Your response must also include all secondary, tertiary and umbrella policies.

6.      True copies of all discovery requests or responses received from or sent to any other party to this action, including but not limited to Interrogatories, Answers to Interrogatories, Requests for Production of Documents or Demand for Documents, Responses to Requests for Production of Documents or Demand for Documents, Requests for Admissions, Responses to Requests for Admissions and Notices of Deposition.

7.      True copies of all reports, notes, test results, memoranda, correspondence or other writings or things created, produced or uncovered in the course of any investigation, inspection, analysis or examination of or related to any fact(s), incident(s) or transaction(s) in question, whether undertaken by answering party or by another entity, private or public.

8.      True copies of the entire file of, concerning and/or in respect to this incident or any party herein named or the underlying recipient of services from plaintiff, maintained by the answering party at any time, including but not limited to notes, diary entries or other writings.

9.      True copies of all photographs, drawings, videotapes, audio tapes, graphs, charts or other reproductions, recordings or physical objects relating to this matter, including but not limited to photographs or recordings of the intellectual property in question.

10.      True copies of all documents or things mentioning, concerning, relating to, describing or identifying: (a) Plaintiff(s), (b) any dealings of or with Plaintiff(s), (c) any alleged incident that is the subject of this lawsuit, or (d) any property, real or personal, tangible or intangible, which is the subject of this lawsuit.

11.     True copies of all video recordings, sound recordings, digital recordings or surveillance, or other recordings on any medium, of plaintiff(s) taken at any time. This request includes but is not limited to all information or writings as defined by the New Jersey Rules of Evidence (including but not limited to photographs, moving pictures, audio recordings, digital recordings and video tapes) relating to the surveillance of Plaintiff(s). This request also includes true copies of all surveillance or other video, audio, digital or other recordings of Plaintiff(s) taken by any person or entity on behalf of any party to this lawsuit, on behalf of any insurance company or attorney, or on behalf of anyone else at any time.

12.     True copies of all documents, pleadings, correspondence and other writings related to any other lawsuits, administrative proceedings, criminal proceedings, or other court proceedings in which defendant was a party.

13.     True copies of everything in the file that answering party's insurance carrier or insurance adjuster maintains on this matter, other than documents consisting merely of communications between attorney and client or between attorney and co-counsel.

14.     True copies of all personnel files, criminal records and driving abstracts of any individual parties named herein.

15.     True copies of all summons, complaints, violations, citations, orders, judgments, or other court or police documents, transcripts or tapes generated, copied or produced in connection with or in relation to any incident between the parties or that is the subject of this lawsuit.

16.     True copies of all incident reports, accident reports, safety reports, safety evaluations, safety studies concerning answering defendant or the property in question.

17.     True copies of all contracts, agreements or addenda thereto related to any fact        or        allegation        at        issue        in        this        lawsuit.

## DEMAND FOR ANSWERS TO INTERROGATORIES FRCP 33

We request that all answering Defendants respond to the following Interrogatories.

Pursuant to FRCP 33, Plaintiff(s) hereby demand that answering party serve at the office of MARK J. MOLZ, ESQUIRE, 1400 Route 38 East, P.O. Box 577, Hainesport, New Jersey 08036 certified answers to the following Interrogatories in the time and manner provided by New Jersey Court Rules and the Discovery Instructions and Definitions set forth below.

1.    Set forth completely and in detail all facts and/or defenses that you assert regarding each paragraph of Plaintiffs' complaint or that you will otherwise assert at Trial.

2.    Set forth completely and in detail all facts that support any of your claims or defenses in this lawsuit or that you will otherwise introduce at Trial.

3.    State the name, address and phone number of each person or witness having knowledge relating to this case or whom you will otherwise call at Trial. For each person listed: provide a summary of expected testimony and knowledge relating to this case.

4.    List each document, writing, recording, photograph, material, object, or thing relating to this case or that you will otherwise utilize as an Exhibit at Trial. For each item listed: attach a true and complete copy; if not in your possession or control, indicate the location and custodian.

5.    Explain in detail every reason why Plaintiff(s) are not entitled to recover from you all damages claimed in this lawsuit.

6.    Describe in detail your relationship and past history, if any, with each party and witness in this lawsuit.

11

7.    Describe in detail each investigation you, your agent or any other public or private entity conducted into any fact, person, item or circumstance at issue in this lawsuit. For each investigation: state name and address of entity conducting the investigation, description of the investigation and results of the investigation. Attach true copies of all reports, notes and other writings or materials involved or created in the investigation.

8.    If you have information on the true identity of any John Doe indicated in Plaintiff's Complaint, or if you claim that another entity is partly or fully responsible for all or part of Plaintiff's damages, set forth the name and address of such person or entity along with a brief description of their possible involvement in this matter.

9.    Specify exact citation, title, author and publisher of all medical, scientific or legal texts or treatises or other authoritative publications that you may mention, cite, utilize or rely on at Trial as direct or indirect evidence, in direct or cross examination. Attach a true copy of relevant portions.

10.    Do you claim that the Defendant did not work for either Defendant? If so, explain in detail the exact nature of the relationship from start to finish.

11.    If you admit that Plaintiff worked for either or both defendants, set forth the arrangement word for word, attaching all written document evidencing the arrangement.

14.    Did Plaintiff ever supply any work product to either Defendant or any client of either Defendant? If so, attach a true copy hereto and describe in words each task and how, when it was assigned and describe whether the work product was satisfactory to the intended recipient.

15.     Did Defendant ever obtain payment for any job that Plaintiff was assigned to or contributed to? If so, attach a true copy of the contract or specifications hereto and describe in words each task and how, when it was assigned and describe the billing indicating how much of the bill was collected.

16.     Did Plaintiff ever receive an evaluation from either Defendant in connection with his work efforts?   If so, attach a true copy of the evaluation and describe in words each opinion or recommendation.

17.     Are any moneys owed from either Defendant to Plaintiff? If so, detail in words the work performed, the amount Defendant collected for the work performed and explain how the amounts were calculated.

18.     Does Plaintiff owe anything to either Defendant? If so, explain completely the way each item is calculated, supplying all backup documents.

## CERTIFICATION OF ANSWERING PARTY

I hereby certify that the foregoing answers to interrogatories made by me are true and complete. I am aware that if any of the foregoing answers made by me are willfully false, I am subject to punishment. I further certify that the copies of the reports annexed hereto, if any, provided by either treating physicians or proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said doctors or experts, either written or oral, are unknown to me, and if such becomes later known or available, I shall serve them promptly on the propounding party. I further certify that I have provided true and complete copies of all requested documents, things and information in my possession or control or otherwise available to me through reasonable efforts. I understand and agree that any information, witnesses or documents that I fail to timely disclose to the propounding party through my responses to these discovery requests will be barred at the time of Trial.

Date: _____          _____

## DISCOVERY INSTRUCTIONS AND DEFINITIONS

The following instructions and definitions apply to the discovery requests made by Plaintiff(s) in this case. You must follow these instructions and definitions when responding to discovery requests propounded herein, or discovery requests propounded later in this case:

1.    If you object to any part of a question or request, answer that part of the question or request to which the objection does not apply.

2.    If a document, thing, or answer is being withheld due to an objection, set forth the objection and the grounds for the objection in detail and describe and identify the item, thing or information being withheld. Otherwise the objection will be deemed waived.

3.    If you assert a privilege in response to any discovery request, you must provide a detailed explanation of the grounds for your claim of privilege, and you must supply a detailed privilege log for each item being withheld. Otherwise, the privilege will be deemed waived.

4.    If you object on the grounds that the request is unduly burdensome, or on similar grounds, explain in detail the nature of the burden and the place and system in which the requested information is being held. Indicate whether an inspection will be voluntarily permitted.

5.    You have a continuing duty to supply responses to these discovery requests. If, after you supply responses to these discovery requests, any information, document or thing not previously produced by you is remembered, discovered, or becomes available or obtainable, you must promptly provide it and amend your responses accordingly.

6.    You must make a diligent, reasonable, good faith effort to locate, gather and disclose all information, documents and things responsive to any of these discovery requests. Court Rules require you to disclose all responsive information, documents and things in your possession or control, or in your agent, attorney or insurer's possession or control, or which you can obtain through reasonable efforts and inquiry. If you are aware of the existence of any document or thing that you nonetheless cannot obtain through reasonable efforts, you must disclose in your responses all information regarding the whereabouts and availability of such document or thing.

7.    If you have no documents or things responsive to a certain discovery request, you must provide a certification or affidavit of one with personal knowledge stating that no such document or thing exists.

8.    If a document or thing responsive to a certain discovery request no longer exists, but existed at one time in the past, you must indicate this and explain to the best of you knowledge why that document or thing no longer exists.

14

9.     If any document or thing requested herein is in the sole possession or control of answering party's insurance carrier or other entity providing insurance or indemnification in this matter, you still must produce the requested document or thing, or state the reason why it is not being produced.

10.    Failure to provide timely, complete and responsive answers to all discovery requests will subject you to sanctions pursuant to R. 4:23 of the New Jersey Court Rules.

11.    All answers and responses that you provide to these discovery requests will be deemed final and complete answers and responses, and it will be assumed that no other responsive information, documents or things exist, unless you timely and properly amend or supplement your answers and responses in strict accordance with New Jersey Court Rules. Please take notice that you will be barred from introducing at Trial, Arbitration or other legal proceeding any testimony, exhibit, evidence or theory of defense not previously disclosed to Plaintiff in your responses to these discovery requests or by timely and proper amendment to your responses made in strict accordance with New Jersey Court Rules.

12.    The following definitions apply to these discovery requests:

a.     "Documents" as requested herein refers to all drafts of any written, recorded or graphic matter however produced or reproduced, including without limitation all papers, books, records, checks, invoices, physical or computer-generated files (on diskette, CD-ROM, hard-drive, or otherwise), E-mail, facsimiles, microfilm, microfiche, memoranda, letters, correspondence, contracts, photographs, video, audio or tape recordings, mechanical recordings or similar recordings and any log and/or transcript thereof, and any other materials of a similar nature.

b.     "Identify" or "identification" when used in reference to any individual person means to state his full name, residence address and his present last known business affiliation. "Identify" or "identification" when used in reference to a document means to state the type of document (e.g. letter, memoranda, telegram, chart, tape recordings, etc.), or some other means of identifying it, and its present location or custodian. If any such document was but is no longer in your possession or subject to your control, state what disposition was made of it.

c.     "Person" refers to any person, persons, entity, or entities including but not limited to an individual, group, partnership, company, proprietorship, corporation, government, government department, public entity or subdivision thereof or joint actors.

d.     "Party" refers to a named party in this lawsuit.

e.     "You" "Your" "Answering Party" "Responding Party" each refers to the litigant(s) or party(ies) to whom the discovery requests are addressed and any and all agents, employees, attorneys, insurers or assigns thereof.

f.     "Requesting Party" refers to party propounding the discovery request.

g.     "Incident in question" or "Property in question" refers to the incident or property which is the subject of this lawsuit.

h.     If Plaintiff is an executor, administrator or guardian, the term "Plaintiff" then refers to the minor, incompetent or decedent at issue, or to the representative prosecuting this lawsuit, whichever is appropriate given the context of the request.

15

i.      If this is a products liability action, "product(s)" refers to the product or group of products claimed in this lawsuit to be defective, or claimed to be a component of a defective product.

## Messages

Sent to Jody Raines on Nov 12, 2010 10:09:26 AM 
Thank you for caring for me this morning, and thank you for loving me.

lol... That's what it said before I typed it. What a bugger I am!

This is my lunch break now. If Jackie is coming home tonight, then how can we go to see 2U? It's OK if you have to cancel and stay with Jackie.

 Received from Jody Raines on Nov 12, 2010 10:13:00 AM
I'll figure it out. Looks like we have the job... He confirmed the meeting for 4 PM.... Is this something you may be interested in working on? It's project based, not hourly... It's 3 sites, all similar,... About $2k + for the three. Has to be in Wordpress tho..

Sent to Jody Raines on Nov 12, 2010 10:16:23 AM 
Whatever you set up is fine Baby. Sure, I'll do the sites and they will be fabulous!

The hourly thing, are you mentioning that based on what I stated yesterday?

 Received from Jody Raines on Nov 12, 2010 10:18:10 AM
No. I do some on project basis and others on hourly. We can talk about it. I don't want any of it to ever be an issue. Would rather be open with you.

EXHIBIT 1

From: Jody Raines <Jody@WebMarCom.net>
Subject: **Agreement format**
Date: December 7, 2010 10:29:54 PM EST
To: Bruce Aristeo <bruce@dxine.net>
Return-Path: <jody@webmarcom.net>
Envelope-To: bruce@dxine.net
Delivery-Date: Tue, 07 Dec 2010 20:30:05 -0700
Received: from dxinenet by box512.bluehost.com with local-bsmtp (Exim 4.69) (envelope-from <jody@webmarcom.net>) id 1PQAjE-0005rY-W3 for bruce@dxine.net; Tue, 07 Dec 2010 20:30:05 -0700
Received: from exprod7mx214.postini.com ([64.18.2.141] helo=psmtp.com) by box512.bluehost.com with smtp (Exim 4.69) (envelope-from <jody@webmarcom.net>) id 1PQAjE-0005lm-6x for bruce@dxine.net; Tue, 07 Dec 2010 20:30:04 -0700
Received: from source ([76.96.59.243]) by exprod7mx214.postini.com ([64.18.6.14]) with SMTP; Tue, 07 Dec 2010 21:30:01 CST
Received: from omta07.westchester.pa.mail.comcast.net ([76.96.62.59]) by qmta13.westchester.pa.mail.comcast.net with comcast id gS7z1f0041GhbT85DTW11G; Wed, 08 Dec 2010 03:30:02 +0000
Received: from [192.168.2.2] ([68.36.37.95]) by omta07.westchester.pa.mail.comcast.net with comcast id gTVw1f00Y23A8Dw3TTVyQc; Wed, 08 Dec 2010 03:29:59 +0000
X-Spam-Checker-Version: SpamAssassin 3.3.0 (2010-01-18) on box512.bluehost.com
X-Spam-Level:
X-Spam-Status: No, score=-2.3 required=5.0 tests=HTML_MESSAGE, RCVD_IN_DNSWL_MED,SPF_HELO_PASS shortcircuit=no autolearn=unavailable version=3.3.0
Content-Type: multipart/alternative; boundary=Apple-Mail-105--60817928
Message-Id: <B715BD7D-41CF-4092-BFBA-9DB2310F2AFF@WebMarCom.net>
Mime-Version: 1.0 (Apple Message framework v1082)
X-Mailer: Apple Mail (2.1082)
X-Pstn-Neptune: 0/0/0.00/0
X-Pstn-Levels: (S:73.93928/99.90000 CV:99.9000 FC:95.5390 LC:95.5390 R:95.9108 P:95.9108 M:97.0282 C:98.6951 )
X-Pstn-Settings: 4 (1.5000:1.5000) s cv gt3 gt2 gt1 r p m c
X-Pstn-Addresses: from <Jody@WebMarCom.net> forward (user good) [159/7]
X-Identified-User: {1938:box512.bluehost.com:dxinenet:dxine.net} {sentby:spamassassin for local delivery to identified user}
▶   1 Attachment, 341 KB



WebDevelop_ages (341 KB)

Jody Raines
Jody@WebMarCom.net
856.217.8341 (mobile)
856.504.6066 (office)
856.504.6067 (fax)
**www.WebMarCom.net**
Internet Strategies ~ Web Marketing ~ Social Media ~ Web Design

Follow me:
www.Twitter.com/SunSwept
www.Facebook.com/JodyRaines
www.Facebook.com/WebMarCom
www.LinkedIn.com/in/JodyRaines
www.WebMarCom.net/blog





856.504.6066 [**Office**]
856.504.6067 [**Fax**]
856.217.8341 [**mobile**]
jody@webmarcom.net [**Email**]
www.WebMarCom.net [**Web**]
PO Box 891 ~ Voorhees, NJ 08043

**Client Name:** DJConnection
**Contact Name: Rick Goldenberg**
**Phone: 856-404-2208**
**Email: rick@djcparty.com**
**Address:**
**Web Site: www.djcparty.com**

### DESCRIPTION OF PROJECT AND PROCESS

1.  **WebMarCom LLC**, referred to here as "Design Firm", and Bruce Aristeo referred to as "Designer", will plan, design, and code a web site for the individual or corporation named above, referred to in this document as "Client", to the specifications in the attached SITE SPECIFICATION.

2.  The estimate included here covers only that which is described in the SITE SPECIFICATION. Additional work will result in additional charges. Additional work is defined as the addition of pages, graphics, or other significant features, any graphic, page design, or actual page requiring more than two rounds of revisions, revisions to text content provided ready for publication, changes to elements which have been finalized, or significant changes in plan, scope, or direction of project. In this case, Client will be provided with a written CHANGE ORDER including an estimate for the additional work.

3.  The process for the creation of visuals, such as graphics and page designs, consists of Design Firm providing drafts and asking for feedback from Client; the feedback is then used to produce another draft. This estimate assumes that 2 rounds of this process for each design element will suffice.

4.  Text content will be provided by Rick Goldenberg as final drafts ready for publication and in digital form (ie. MSWord or Open Office)*. Graphic content will be provided by Client in an orderly manner and clearly labeled as to desired use on site, these images must be in the highest possible resolution and size for optimal quality and resizing. *Content to be edited to improve optimization in search engines. Also, if needed,  graphic images or stock photos to be purchased on behalf of client at cost. Any additional manipulation of art, photos or graphics to be invoiced hourly at rate of $100/hour for graphic design or code.

5.  To maintain our portfolio credentials, and the integrity of any applicable copyrights, Design Firm shall be entitled to place an unobtrusive credit with a hypertext link ("Web Site Design by...") in the footer on each page of the web site. Design Firm is also entitled to reproduce samples of Client's web site in our portfolio and in any marketing materials.

6.  Design Firm may use qualified subcontractors under our supervision for any or all work on this project.

### ESTIMATE AND PAYMENT ARRANGEMENTS

7.  Design Firm estimates that the cost for producing the site described in the attached SITE SPECIFICATION will be $1,950.

8.  Payment shall be made as follows:

    A deposit of 40% of estimated total is due upon signing of this Agreement, before work begins;

    A second payment of 20% of the estimated total (adjusted for changes in estimate if necessary) is due when page templates (without added content) are complete and approved. Upon receipt of payment it is acknowledged that page templates are satisfactory to Client and any changes to overall design or layout after receipt of payment will incur additional charges;

    A final 40% payment (adjusted again for changes in estimate if necessary) is due upon completion of site as specified, before site is published on the Internet. Upon receipt of payment it is acknowledged

that entire site is satisfactory to Client and this agreement has been fulfilled in its entirety. Any additional changes will require a new agreement or addendum to this agreement as an estimate.

9. In the event of the cancellation of this agreement, or any delay of more than 90 days, we will invoice you for the greater of either: (1) all work completed up to the date of notification, based upon the percentage of the project finished, including expenses; or (2) 20% of the agreed-upon estimate plus expenses, and this contract shall be considered fulfilled by Design Firm. All incomplete work will remain the property of Design Firm. All payments already made will first be applied to these charges.

## OTHER LEGAL AGREEMENTS

10. Design Firm will maintain the confidentiality of Client's source materials, technical and marketing plans and all other sensitive information.

11. Design Firm and Client agree that any dispute arising out of this Agreement shall first be resolved by mediation, if possible. This contract was entered into in Camden County, New Jersey, and any necessary arbitration or litigation will take place in this county.

12. Upon full payment of all invoices due, copyright to page designs produced by Design Firm for Client shall belong to Client. Secondary materials created by Design Firm during production, including drafts, plans, graphic source files, and templates, remain the sole property of Design Firm unless other arrangements are made.

13. Client is solely responsible for the editorial content of the material included on its website. Accordingly, Client agrees that it will defend and indemnify (hold harmless) Design Firm from any suit, demand, or claim resulting from the editorial content of the website.

14. Client represents to Design Firm and unconditionally guarantees that any elements of text, graphics, photos, designs, trademarks, or other artwork furnished to Design Firm for inclusion in Client's web site are owned by Client, or that Client has permission from the rightful owner to use each of these elements, and will hold harmless, protect and defend Design Firm and its subcontractors from any claim or suit arising from the use of such elements furnished by the Client.

15. Design Firm will set up web hosting for Client with a professional hosting company known to be reliable. However, Design Firm makes no guarantees as to minimum "uptime", nor shall Design Firm be held responsible for any direct, indirect, special or consequential damages resulting from possible lapses in hosting services. Such possible damages include any lost profits or business interruption or loss of digital data. It is the Client's responsibility to purchase hosting and domain registration.

16. Design Firm will not be liable to Client or to any third party for any damages arising from the use of web site.

17. If any provision of this agreement shall be unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this agreement and shall not affect the validity and enforceability of any remaining provisions.

18. To be valid, this Agreement must be signed within 30 days of April 21, 2011, and be accompanied by a deposit of the amount specified above. All payments must be made by check or money order.

19. To be valid, this Agreement must have an attached SITE SPECIFICATION document, initialed and dated by Design Firm and Client.

20. This Agreement may have attachments consisting of one or more initialed and dated CHANGE ORDERS and *The Print & New Media Design Trade Customs*, whose terms shall become part of this contract.

*Our signatures below indicate our agreement with the terms of this contract.*

_____   _____

WebMarCom                              Date

_____   _____

Rick Goldenberg                        Date

The following describes the planned web site for the purposes of the estimate included in the attached contract. Specifications in subsequent CHANGE ORDERS shall supersede these.

A. **Total Number Of Pages:**
   **32**

B.      **Total Number Of Graphic Images:** To be supplied by Rick Goldenberg. Additional images or stock photography or art to be invoiced at cost.  Graphic design or manipulation beyond initial design phase to be invoiced at $100/hour.  Site will include FLIKR set up with photos posted on FLIKR available for review on DJ Connection website.

C.     **List Of Planned Pages:**
   *HOME - General description of the company and services, including keywords and geo-target*
   *ABOUT US - Experience and qualifications, memberships (Chamber, etc), affiliations*
   *SERVICES - Page of general information*
      *SPECIAL OCCASION DJ - Separate Pages for Each Type Of Event, With Keywords:*
         *Bar Mitzvah*
         *Bat Mitzvah*
         *Wedding DJ (Bridal)*
         *Birthday DJ*
         *Sweet 16 DJ*
         *Anniversary DJ*
         *Kids Parties*
         *Adult Parties*
         *Themed Parties*
            *Game Show Mania*
            *Interactive Robot*
            *Dance Lessons*
            *Party DJ*
      *CORPORATE EVENT DJ - keyword enhanced, geo targeted description*
         *Holiday Party DJ*
         *Trade Show Entertainment*
         *Team Building Programs*
         *Conventions or Grand Opening Entertainment*
      *EDUCATION OR SCHOOL EVENTS*
         *School Dance*
         *Prom*
         *Themed Events*
      *OTHER - To be determined*
   *PHOTO AND VIDEO GALLERY AND FLIKR CONNECTION*
   *TESTIMONIALS AND FACEBOOK CONNECTION*
   *CONTACT US - Form, Google Map if required, phone*
   *BLOG - Articles, Lists, Ongoing content*

D.    **Details On Text Content To Be Included**
   *Suggest Sign Up for newsletter on every page*
   *Suggest contact us form on every page*
   *Call to action features - download event planning form*

E. **Details On Graphic Elements To Be Included**
   **Logo (supplied or simple logo created)**
   **Header graphic (with up to 2 versions - original and 1 revision)**
   **Next Gen Photo Gallery**
   **You Tube Channel Set Up and Branded**

F. **Site Structure/Navigation**

3

**Top Navigation with drop downs**

G. **Design/Layout/Color Concepts**
      **Colors to be determined**
      **Clean, uncluttered appearance**
      **Wordpress - easy content management**

H. **Interactive Forms**
      **Sign Up For Newsletter**
      **Contact us**
      **Call To Action (download Event Planner)**
      **Connect To Flikr**
      **Connect to Facebook (Like)**

I.    **Search Engine Positioning Measures**
    A.   **Evaluate content**
    B.   **Keyword research**
    C.   **Revisions to content**

_____     _____
       WebMarCom                        Date

_____     _____
      Rick Goldenberg                  Date

# The Print & New Media Design Trade Customs

*The Print & New Media (P&NM) Design Trade Customs* were developed by the International Design by Electronics Association, the Graphic Artists Guild and the Art Directors' Club of Metro- politan Washington. They have been adopted by the graphic design industry and reflect the current laws and practices of design professionals.

*The P&NM Design Trade Customs* are those practices which delineate the specific areas of responsibility with regard to a special trade or operation which might not be outlined in a commercial agreement. Where a commercial agreement is silent with regard to one or more practices, the P&NM Design Trade Customs areas are used to interpret the intent of the parties.

It should be clearly understood that *the P&NM Design Trade Customs* protect both parties in a commercial agreement. It is, therefore, the responsibility and obligation of involved parties to understand their content and meaning of these customs.

**1. Estimate:** A preliminary projection of cost which is not intended to be binding. Estimates are based upon prevailing wages, the anticipated hours of work and cost of materials and supplies necessary to produce work in accordance with preliminary copy, style and specifications and are not binding upon the designer unless a firm quotation has been issued.

**2. Quotation:** A quotation is a fixed price for producing a given project. A quotation is firm unless otherwise specified. Quotations are subject to acceptance within 30 days and are based on the cost of labor and materials on the date of the quote. If changes occur in the cost of materials, labor or other costs prior to acceptance, the right is reserved to change the price quotes. Subsequent projects will be subject to price revision if required. Quotations do not include alterations or applicable sales tax unless otherwise specified.

**3. Alterations:** Alteration charges are incurred by a client when a change is made to: approved layout, approved manuscript, mechanicals or disk produced correctly or any new work not within the original specifications.

**4. Overtime:** Overtime is work performed by the designer in excess of the work schedule of the project. Overtime may be charged at the designers prevailing rates for this service.

**5. Copyright/Ownership:** Creative work such as sketches, illustrations, layouts, designs, icons, logos, etc. produced on paper, computer disks or any other medium, are protected under the 1976 copyright act. Until the designer transfers ownership rights, creative work remains the property of the designer.

There can be no use of the designer's work except upon compensation to be determined by the designer. Purchase orders issued after the completion of creative work, claiming the clients ownership of creative work, are not valid unless agreed upon by both parties.

**6. Experimental Work:** Experimental or preliminary work performed at the client's request will be charged at current rates and may not be used by the client until the designer has been reimbursed in full for the work performed. All experimental work performed by a designer without authorization of the client is not billable.

**7. Condition of Copy:** If original copy, disk or manuscript, furnished by the client to the designer differs from that which has been originally described and consequently quoted, the original quotation shall be amended or a new quotation will be issued.

**8. Production Schedules:** Production schedules will be established and adhered to by client and designer, provided that neither shall incur any liability or penalty for delays due to state of war, riot, civil disorder, fire, labor trouble, strikes, accidents, energy failure, equipment breakdown, delays of suppliers or carriers, action of government or civil authority and acts of God or other causes beyond the control of client or designer. Where production schedules are not adhered to by the client, final delivery date(s) will be subject to renegotiation.

**9. Client's Property:** The designer will maintain fire, extended coverage, vandalism, malicious mischief and sprinkler leakage insurance covering all property belonging to the client while such property is in designer's possession. The designer's liability for such property shall not exceed the amount recoverable from such insurance.

Client's property of extraordinary value shall be specially protected, only if the client identifies the property as requiring extraordinary coverage.

The matter of first reproduction rights with subsequent reproduction rights is subject to additional compensation.

**10. Outright Purchase vs. Reproduction Rights:** These terms should be established at the time of purchase. Outright purchase gives the buyer physical possession of the artwork, disk, or negatives, while reproduction rights and related copyright interests require the return of the original to the artist. Outright purchase does not give to the buyer commercial or

private reproduction rights or any other copyright interests unless so stipulated in the purchase agreement. should be clearly understood at the time of purchase.

**11. Re-use and Extended Use of Artwork, Disk or Negatives:** Artwork disk or negatives purchased for a specific use cannot be re-used or adapted for other purposes than originally planned without additional compensation to the artist. If this possibility exists at the time of purchase, it should be so stated and the price adjusted accordingly. If re-use or adaptation occurs after purchase, the buyer should negotiate reasonable additional compensation with the artist.

Whenever adaptation requires the services of an artist, and the creator has performed to the buyer's satisfaction, the artist should be given the opportunity to revise his own work.

**12. Mark-ups:** Any out-of-agency services or goods such as typography, printing, photography, etc., or materials used specifically for the completion of a given project will be billed to the client with an appropriate mark-up. This mark-up is a handling fee only and unless otherwise agreed, does not include any professional or management fees.

**13. Speculation:** Graphic designs should not be asked for on speculation by a client. Design contests, except for educational or philanthropic purposes, are also considered speculation and not a trade custom.

**14. Terms:** By assigning an order either verbally or in writing or by purchase order, the client agrees to the designer's terms of payment and late charges on unpaid balances prescribed to by the designer. Payment shall be whatever was set forth in quotation or invoice unless otherwise provided in

writing. Disputes over invoices must be made by the client in writing within a period of fifteen (15) days after the client's receipt of the invoice in question. Failure to make such claim within the stated period shall constitute acceptance and an admission that the client agrees with the invoice submitted. If only a portion of the invoice is in dispute, it is the client's responsibility to pay the portion not in dispute within the terms of the invoice.

**15. Liability:** A designer is only liable for the correction of errors made during the design and mechanical processes. The ultimate proofing prior to printing is always the client's responsibility unless the designer accepts this responsibility in written agreement. In any instance, the designer cannot be liable for more than the design and mechanical costs of a job in dispute.

**16. Indemnification:** The client shall indemnify and hold harmless the designer from any and all losses, costs, expenses, and damages (including court costs and reasonable attorney fees) on account of any and all manner of claims, demands, actions, and proceedings that may be instituted against the designer on grounds alleging that the said designer unknowingly violated any copyrights or any proprietary right of any person.

Any materials such as photographs, photostats, transparencies, drawings, paintings, maps, diagrams, etc. furnished by the client to the designer should be free and clear of any copyright or trademark infringements. The designer is indemnified against any liability pursuant to the client's failure to obtain correct usage rights and said materials.

Any false statements knowingly or unknowingly given to the designer, by the client, to be used as factual information to promote a product or service shall remain the client's sole responsibility for substantiation. The designer is indemnified from any liability due to the client's negligence.

**17. Print Management/ Press Inspections:** If a designer performs a press inspection for a client, the client's responsibility for proofing remains in effect. If the client has signed a printer's blueline, the designer is not responsible for any errors reflected in the approved blueline or final proof. If the designer approves color on a press proof or any other color proof, the designer is only responsible for approving color acceptable by industry standards. The printer is responsible for ensuring that the subsequent press run matches the color within acceptable standards of the proof approved by the designer.

**18. New Media:** If a designer reviews a Website for a client, the client's responsibility for proofing remains in effect. If the client has approved a site's content, the designer is not responsible for any errors reflected on the approved site. The client's Webmaster is responsible for ensuring that the colors and images remain within the acceptable standards of what has been approved by the designer.

© 2000 Art Directors Club of Metropolitan Washington

Initials



WEBMARCOM LLC
3 BRADFORD WAY
VOORHEES, NJ 08043

11-09

DATE

EXHIBIT 3A

From: Jody Raines <Jody@WebMarCom.net>
Subject: **Question**
Date: February 18, 2011 10:44:22 AM EST
To: Bruce Aristeo <bruce@webmarcom.net>
Received: (qmail 5641 invoked from network); 18 Feb 2011 15:44:25 -0000
Received: from unknown (HELO p3pismtp01-017.prod.phx3.secureserver.net) ([10.6.12.17]) (envelope-sender
  <jody@webmarcom.net>) by p3pismtp05-02.prod.phx3.secureserver.net (qmail-1.03) with SMTP for
  <bruce@webmarcom.net>; 18 Feb 2011 15:44:25 -0000
Received: from qmta08.westchester.pa.mail.comcast.net ([76.96.62.80]) by p3pismtp01-017.prod.phx3.secureserver.net
  with ESMTP; 18 Feb 2011 08:44:24 -0700
Received: from omta20.westchester.pa.mail.comcast.net ([76.96.62.71]) by qmta08.westchester.pa.mail.comcast.net with
  comcast id 9Tid1g0071YDfWL58TkRqi; Fri, 18 Feb 2011 15:44:25 +0000
Received: from [192.168.2.2] ([68.36.32.108]) by omta20.westchester.pa.mail.comcast.net with comcast id
  9TkQ1g00W2KyMc43gTkQYY; Fri, 18 Feb 2011 15:44:24 +0000
X-Ironport-Anti-Spam-Result: AjoCADcgXk1MYD5QkWdsb2JhbACmlxUBAQEBCQsKBxEDIbwKAoMVgkcEhQuKQA
Content-Type: multipart/alternative; boundary=Apple-Mail-117--238400677
Message-Id: <9731C595-3D3D-4B69-A5E0-DEADA13FA6E7@WebMarCom.net>
Mime-Version: 1.0 (Apple Message framework v1082)
X-Mailer: Apple Mail (2.1082)
X-Nonspam: Statistical 50%

Bruce,

So far, I paid you $1025 for the work as follows:

Columbia $600
JC Wood $200
Lachman $100
Sparks $75
Pink Ribbon $50

Total - $1025

What is the other $25?   I just don't remember how we came up with the $25?

Jody Raines
Jody@WebMarCom.net
856.217.8341 (mobile)
856.504.6066 (office)
856.504.6067 (fax)
**www.WebMarCom.net**
Internet Strategies ~ Web Marketing ~ Social Media ~ Web Design

Follow me:
www.Twitter.com/SunSwept
www.Facebook.com/JodyRaines
www.Facebook.com/WebMarCom
www.LinkedIn.com/in/JodyRaines
www.WebMarCom.net/blog

EXHIBIT 3B

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| WebMarCom LLC<br>P.O. Box 891<br>Voorhees, NJ 08043<br>856-217-8341 | $ | **2010** | |
| | 2 Royalties | Form **1099-MISC** | |
| | $ | | |
| | 3 Other income | 4 Federal income tax withheld | **Copy B**<br>**For Recipient** |
| | $ | $ | |

| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments |
|---|---|---|---|
| 27-1313472 | 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 | $ | $ |

| RECIPIENT'S name, address, city and ZIP code | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
|---|---|---|---|
| Bruce Aristeo<br><br>1640 Nixon Drive Suite 272<br><br>Moorestown NJ 08057 | $          1050.00 | $ | |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br>$ | |
| | 11 | 12 | |
| | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| Account number (see instructions) | | | |

| 15a Section 409A deferrals | 15b Section 409A income | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|---|
| $ | $ | $ | | $ |
| | | $ | | $ |

Form **1099-MISC**          (keep for your records)          Department of the Treasury - Internal Revenue Service

EXHIBIT 3C

6/5/11

| Date | Invoice # | Job | Time | Type | Amount | Paid |
|---|---|---|---|---|---|---|
| **WebMarCom** | | | | | | |
| 31-Jan | 1 | Columbia NW - $500 | | Project | $250.00 | |
| | | Columbia NW | 3.5 | Design | $350.00 | |
| | | JC Wood | 2 | Design | $200.00 | |
| | | Lachmann | 1 | Design | $100.00 | |
| | | Sparks Fly - $150 | | Project | $75.00 | |
| | | Pink Ribbon - $150 | | Project | $75.00 | |
| | | | | | **$1,050.00** | $1,050.00 |
| 8-Feb | 2 | Summit Financial - $1200 | | Project | $600.00 | |
| | | Application - Pet Supplies | | | $40.00 | |
| | | | | | **$640.00** | $640.00 |
| 8-Feb | 3 | Sparks Fly | 2 | Design | $200.00 | |
| | | | | | **$200.00** | $200.00 |
| 8-Feb | 4 | ProPeople Teams - $1400 | 14 | Project | $700.00 | |
| 15-Feb | | ProPeople Teams - $300 | 3 | Project | $150.00 | |
| 23-Feb | | ProPeople Teams - $150 | 1.5 | Project | $75.00 | |
| 25-Feb | | ProPeople Teams - $100 | 1 | Project | $50.00 | |
| | | | | | **$975.00** | $0.00 |
| 8-Feb | 5 | Promotion1 - $500 | | Project | $250.00 | |
| | | Promotion1 - $250 License Fee | | | $250.00 | |
| | | | | | **$500.00** | $0.00 |
| 26-Feb | 6 | ProPeople Teams - Adobe Illustrator | 6.5 | Project | $812.50 | |
| | | ProPeople Teams - Adobe PhotoShop | 11 | Project | $1,375.00 | |
| | | ProPeople Teams - Coda | 9.5 | Project | $950.00 | |
| | | ProPeople Teams - HubSpot | 14 | Project | $1,400.00 | |
| | | | | | **$4,537.50** | $0.00 |
| 27-Feb | 7 | Promotion1 - $200 | | Project | $100.00 | |
| | | | | | **$100.00** | $0.00 |
| 26-Feb | 8 | SunRise Signs | | Design | $700.00 | |
| | | | | | **$700.00** | $0.00 |
| 15-Jan | 9 | Weekly Fitness - Logo | 2 | Design | $200.00 | |
| 3-Feb | | Weekly Fitness - LightBox | 2 | Design | $200.00 | |
| | | Weekly Fitness - Board Members | 3 | Design | $300.00 | |
| | | | | | **$700.00** | $0.00 |
| 1-Feb | 10 | Graphic Impact - Header | 2 | Design | $200.00 | |
| 2-Feb | | Graphic Impact - Constant Contact | 8 | Design | $800.00 | |
| 7-Feb | | Graphic Impact - BackUp | 1 | Design | $100.00 | |
| | | | | | **$1,100.00** | $0.00 |
| 7-Feb | 11 | Futon Store | 1 | Design | $100.00 | |
| | | | | | **$100.00** | $0.00 |
| 6-Feb | 12 | Clients First - $500 | | Project | $250.00 | |
| | | Clients First - Buttons & Logo | 5 | Design | $500.00 | |
| | | Clients First - 2 Home Pages | 2 | Design | $200.00 | |
| | | Clients First - Migrate Home Page | 1 | Design | $100.00 | |
| | | | | | **$1,050.00** | $0.00 |
| 31-Jan | 13 | WoodStock - Research | 2.5 | Design | $250.00 | |
| | | | | | **$250.00** | $0.00 |
| 22-Dec | 14 | Hope Med - Java Script Repair | 2 | Design | $200.00 | |
| 22-Jan | | Hope Med - SJL Site Map | 3.5 | Design | $350.00 | |
| 11-Feb | | Hope Med - Change Site | 2 | Design | $200.00 | |
| | | Hope Med - New Header | 1 | Design | $100.00 | |
| | | | | | **$850.00** | $0.00 |
| 6-Feb | 15 | prn Health Service - Create Page | 2 | Design | $200.00 | |
| 10-Feb | | prn Health Service - Migrate Site | 3 | Design | $300.00 | |
| | | prn Health Service - Convert Flash | 2 | Design | $200.00 | |
| 11-Feb | | prn Health Service - HubSpot | 1 | Design | $100.00 | |
| | | prn Health Service - YouTube Account | 1 | Design | $100.00 | |
| | | prn Health Service - Embed Video | 1 | Design | $100.00 | |
| 12-Feb | | prn Health Service - images | 1 | Design | $100.00 | |
| | | | | | **$1,100.00** | $0.00 |
| 7-Jan | 16 | Summit Financial - App Page | 1 | Design | $100.00 | |
| | | Summit Financial - Background | 1.5 | Design | $150.00 | |
| | | | | | **$250.00** | $0.00 |
| 6-Jan | 20 | Columbia NW - Acc Page | 3 | Design | $300.00 | |
| | | | | | **$300.00** | $0.00 |

| | | | | |
|---|---|---|---|---|
| | Total Time | 123.5 | **Total** | $14,402.50 |
| | | | **Paid** | $1,890.00 |
| | | | **Balance Due** | $12,512.50 |

EXHIBIT 4

# Aristeo Enterprises LLC

1640 Nixon Drive
Suite 272
Moorestown, NJ 08057

## Sales Register [All Sales]

## 12/1/10 through 4/26/11

4/26/11
2:25:41 PM                                                                                      Page 1

| Date | Invoice # | Customer PO | Customer Name | Amount | Amount Due | Status |
|------|-----------|-------------|---------------|--------|-----------|--------|
| 2/1/11 | 00000001 | | WebMarCom LLC | $1,050.00 | $0.00 | Closed |
| 2/8/11 | 00000002 | | WebMarCom LLC | $640.00 | $0.00 | Closed |
| 2/11/11 | 00000003 | | WebMarCom LLC | $200.00 | $0.00 | Closed |
| 2/8/11 | 00000004 | | WebMarCom LLC | $975.00 | $975.00 | Open |
| 2/11/11 | 00000005 | | WebMarCom LLC | $500.00 | $500.00 | Open |
| 2/27/11 | 00000006 | | WebMarCom LLC | $4,537.50 | $4,537.50 | Open |
| 2/27/11 | 00000007 | | WebMarCom LLC | $100.00 | $100.00 | Open |
| 2/27/11 | 00000008 | | WebMarCom LLC | $700.00 | $700.00 | Open |
| 2/27/11 | 00000009 | | WebMarCom LLC | $700.00 | $700.00 | Open |
| 2/28/11 | 00000010 | | WebMarCom LLC | $1,100.00 | $1,100.00 | Open |
| 2/28/11 | 00000011 | | WebMarCom LLC | $100.00 | $100.00 | Open |
| 2/28/11 | 00000012 | | WebMarCom LLC | $1,050.00 | $1,050.00 | Open |
| 2/28/11 | 00000013 | | WebMarCom LLC | $250.00 | $250.00 | Open |
| 2/28/11 | 00000014 | | WebMarCom LLC | $850.00 | $850.00 | Open |
| 2/28/11 | 00000015 | | WebMarCom LLC | $1,100.00 | $1,100.00 | Open |
| 2/28/11 | 00000016 | | WebMarCom LLC | $250.00 | $250.00 | Open |
| 4/12/11 | 00000020 | | WebMarCom LLC | $300.00 | $300.00 | Open |
| | | | Total | $14,402.50 | $12,512.50 | |

# Appendix A

## The Copyright Act of 1976[1]

### Title I — General Revision of Copyright Law

### Transitional and Supplementary Provisions

Sec. 102. This Act becomes effective on January 1, 1978, except as otherwise expressly provided by this Act, including provisions of the first section of this Act. The provisions of sections 118, 304(b), and chapter 8 of title 17, as amended by the first section of this Act, take effect upon enactment of this Act.[2]

Sec. 103. This Act does not provide copyright protection for any work that goes into the public domain before January 1, 1978. The exclusive rights, as provided by section 106 of title 17 as amended by the first section of this Act, to reproduce a work in phonorecords and to distribute phonorecords of the work, do not extend to any nondramatic musical work copyrighted before July 1, 1909.

Sec. 104. All proclamations issued by the President under section 1(e) or 9(b) of title 17 as it existed on December 31, 1977, or under previous copyright statutes of the United States, shall continue in force until terminated, suspended, or revised by the President.

Sec. 105. (a)(1) Section 505 of title 44 is amended to read as follows:

"

"The Public Printer shall sell, under regulations of the Joint Committee on Printing to persons who may apply, additional or duplicate stereotype or electrotype plates from which a Government publication is printed, at a price not to exceed the cost of composition, the metal, and making to the Government, plus 10 per centum, and the full amount of the price shall be paid when the order is filed.".

(2) The item relating to section 505 in the sectional analysis at the beginning of chapter 5 of title 44, is amended to read as follows:

"505. Sale of duplicate plates.".

(b) Section 2113 of title 44 is amended to read as follows:

[To assist the reader, section 2113 of title 44, now designated section 2117, appears in Appendix I,      , as currently amended.]

EXHIBIT 6

(c) In section 1498(b) of title 28, the phrase "section 101(b) of title 17" is amended to read "section 504(c) of title 17".

(d) Section 543(a)(4) of the Internal Revenue Code of 1954, as amended, is amended by striking out "(other than by reason of section 2 or 6 thereof)".

(e) Section 3202(a) of title 39 is amended by striking out clause (5). Section 3206 of title 39 is amended by deleting the words "subsections (b) and (c)" and inserting "subsection (b)" in subsection (a), and by deleting subsection (c). Section 3206(d) is renumbered (c).

(f) Subsection (a) of section 6 of the Standard Reference Data Act (15 U.S.C. 290e) is amended by deleting the phrase "section 8" and inserting in lieu thereof the phrase "section 105".[3]

(g) Section 131 of title 2 is amended by deleting the phrase "deposit to secure copyright," and inserting in lieu thereof the phrase "acquisition of material under the copyright law,".

**Sec. 106.** In any case where, before January 1, 1978, a person has lawfully made parts of instruments serving to reproduce mechanically a copyrighted work under the compulsory license provisions of section 1(e) of title 17 as it existed on December 31, 1977, such person may continue to make and distribute such parts embodying the same mechanical reproduction without obtaining a new compulsory license under the terms of section 115 of title 17 as amended by the first section of this Act. However, such parts made on or after January 1, 1978, constitute phonorecords and are otherwise subject to the provisions of said section 115.

**Sec. 107.** In the case of any work in which an ad interim copyright is subsisting or is capable of being secured on December 31, 1977, under section 22 of title 17 as it existed on that date, copyright protection is hereby extended to endure for the term or terms provided by section 304 of title 17 as amended by the first section of this Act.

**Sec. 108.** The notice provisions of sections 401 through 403 of title 17 as amended by the first section of this Act apply to all copies or phonorecords publicly distributed on or after January 1, 1978. However, in the case of a work published before January 1, 1978, compliance with the notice provisions of title 17 either as it existed on December 31, 1977, or as amended by the first section of this Act, is adequate with respect to copies publicly distributed after December 31, 1977.

**Sec. 109.** The registration of claims to copyright for which the required deposit, application, and fee were received in the Copyright Office before January 1, 1978, and the recordation of assignments of copyright or other instruments received in the Copyright Office before January 1, 1978, shall be made in accordance with title 17 as it existed on December 31, 1977.

**Sec. 110.** The demand and penalty provisions of section 14 of title 17 as it existed on December 31, 1977, apply to any work in which copyright has been secured by publication with notice of copyright on or before that date, but any deposit and registration made after that date in response to a demand under that

section shall be made in accordance with the provisions of title 17 as amended by the first section of this Act.

**Sec. 111.** Section 2318 of title 18 of the United States Code is amended to read as follows:

[To assist the reader, section 2318 of title 18, as currently amended, along with related criminal provisions, appears in Appendix G,        .]

**Sec. 112.** All causes of action that arose under title 17 before January 1, 1978, shall be governed by title 17 as it existed when the cause of action arose.

**Sec. 113.** (a) The Librarian of Congress (hereinafter referred to as the "Librarian") shall establish and maintain in the Library of Congress a library to be known as the American Television and Radio Archives (hereinafter referred to as the "Archives"). The purpose of the Archives shall be to preserve a permanent record of the television and radio programs which are the heritage of the people of the United States and to provide access to such programs to historians and scholars without encouraging or causing copyright infringement.

(1) The Librarian, after consultation with interested organizations and individuals, shall determine and place in the Archives such copies and phonorecords of television and radio programs transmitted to the public in the United States and in other countries which are of present or potential public or cultural interest, historical significance, cognitive value, or otherwise worthy of preservation, including copies and phonorecords of published and unpublished transmission programs—

(A) acquired in accordance with sections 407 and 408 of title 17 as amended by the first section of this Act; and

(B) transferred from the existing collections of the Library of Congress; and

(C) given to or exchanged with the Archives by other libraries, archives, organizations, and individuals; and

(D) purchased from the owner thereof.

(2) The Librarian shall maintain and publish appropriate catalogs and indexes of the collections of the Archives, and shall make such collections available for study and research under the conditions prescribed under this section.

(b) Notwithstanding the provisions of section 106 of title 17 as amended by the first section of this Act, the Librarian is authorized with respect to a transmission program which consists of a regularly scheduled newscast or on-the-spot coverage of news events and, under standards and conditions that the Librarian shall prescribe by regulation—

(1) to reproduce a fixation of such a program, in the same or another tangible form, for the purposes of preservation or security or for distribution under the conditions of clause (3) of this subsection; and

(2) to compile, without abridgment or any other editing, portions of such fixations according to subject matter, and to reproduce such compilations for the purpose of clause (1) of this subsection; and

(3) to distribute a reproduction made under clause (1) or (2) of this subsection—

(A) by loan to a person engaged in research; and

(B) for deposit in a library or archives which meets the requirements of section 108(a) of title 17 as amended by the first section of this Act,

in either case for use only in research and not for further reproduction or performance.

(c) The Librarian or any employee of the Library who is acting under the authority of this section shall not be liable in any action for copyright infringement committed by any other person unless the Librarian or such employee knowingly participated in the act of infringement committed by such person. Nothing in this section shall be construed to excuse or limit liability under title 17 as amended by the first section of this Act for any act not authorized by that title or this section, or for any act performed by a person not authorized to act under that title or this section.

(d) This section may be cited as the "American Television and Radio Archives Act".

**Sec. 114.** There are hereby authorized to be appropriated such funds as may be necessary to carry out the purposes of this Act.

**Sec. 115.** If any provision of title 17, as amended by the first section of this Act, is declared unconstitutional, the validity of the remainder of this title is not affected.

## Appendix A · Endnotes

1. This appendix contains the Transitional and Supplementary Provisions of the Copyright Act of 1976, Pub. L. No. 94-533, 90 Stat. 2541, that do not amend title 17 of the

2. The Copyright Act of 1976 was enacted on October 19, 1976.

3. The Intellectual Property and High Technology Technical Amendments Act of 2002 amended section 105(f) by substituting "section 6 of the Standard Reference Data Act (15 U.S.C. 290e)" for "section 290(e) of title 15." Pub. L. No. 107-273, 116 Stat. 1758, 1910.

c i r c u l a r  92

# Copyright Law of the United States

o c t o b e r  2 0 0 9

EXHIBIT 7

### § 501 · Infringement of copyright[3]

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

(c) For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

(d) For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

(e) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(5), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

(f)(1) With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local market of that station.

(2) A television broadcast station may file a civil action against any satellite carrier that has refused to carry television broadcast signals, as required under section 122(a)(2), to enforce that television broadcast station's rights under section 338(a) of the Communications Act of 1934.

## §502 · Remedies for infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

## §503 · Remedies for infringement:
### Impounding and disposition of infringing articles[4]

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—

(A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;

(B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies of phonorecords may be reproduced; and

(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## §504 · Remedies for infringement: Damages and profits[5]

(a) In general.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-

able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U.S.C. 1127).

(d) Additional Damages in Certain Cases. — In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that

Case 1:11-cv-04247-JBS-KMW   Document 1   Filed 07/22/11   Page 40 of 54 PageID: 40

the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

## §505 · Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## §506 · Criminal offenses[6]

(a) Criminal Infringement. —

(1) In general. — Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed —

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

(2) Evidence. — For purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright.

(3) Definition. — In this subsection, the term "work being prepared for commercial distribution" means —

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution —

(i) the copyright owner has a reasonable expectation of commercial distribution; and

(ii) the copies or phonorecords of the work have not been commercially distributed; or

(B) a motion picture, if, at the time of unauthorized distribution, the motion picture —

   (i) has been made available for viewing in a motion picture exhibition facility; and

   (ii) has not been made available in copies for sale to the general public in the United States in a format intended to permit viewing outside a motion picture exhibition facility.

 (b) Forfeiture, Destruction, and Restitution.—Forfeiture, destruction, and restitution relating to this section shall be subject to section 2323 of title 18, to the extent provided in that section, in addition to any other similar remedies provided by law.

 (c) Fraudulent Copyright Notice.—Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.

 (d) Fraudulent Removal of Copyright Notice.—Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.

 (e) False Representation.—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

 (f) Rights of Attribution and Integrity.—Nothing in this section applies to infringement of the rights conferred by section 106A(a).

## §507 · Limitations on actions[7]

 (a) Criminal Proceedings.—Except as expressly provided otherwise in this title, no criminal proceeding shall be maintained under the provisions of this title unless it is commenced within 5 years after the cause of action arose.

 (b) Civil Actions.—No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

## §508 · Notification of filing and determination of actions

 (a) Within one month after the filing of any action under this title, the clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action. If any other copyrighted work is later included in the action by amendment, answer, or other pleading, the clerk shall

also send a notification concerning it to the Register within one month after the pleading is filed.

(b) Within one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court.

(c) Upon receiving the notifications specified in this section, the Register shall make them a part of the public records of the Copyright Office.

## §509 · [Repealed][8]

## §510 · Remedies for alteration of programming by cable systems[9]

(a) In any action filed pursuant to section 111(c)(3), the following remedies shall be available:

(1) Where an action is brought by a party identified in subsections (b) or (c) of section 501, the remedies provided by sections 502 through 505, and the remedy provided by subsection (b) of this section; and

(2) When an action is brought by a party identified in subsection (d) of section 501, the remedies provided by sections 502 and 505, together with any actual damages suffered by such party as a result of the infringement, and the remedy provided by subsection (b) of this section.

(b) In any action filed pursuant to section 111(c)(3), the court may decree that, for a period not to exceed thirty days, the cable system shall be deprived of the benefit of a statutory license for one or more distant signals carried by such cable system.

## §511 · Liability of States, instrumentalities of States, and State officials for infringement of copyright[10]

(a) In General.—Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal Court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies

of phonorecords in violation of section 602, or for any other violation under this title.

(b) Remedies. — In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503, actual damages and profits and statutory damages under section 504, costs and attorney's fees under section 505, and the remedies provided in section 510.

## §512 · Limitations on liability relating to material online[11]

(a) Transitory Digital Network Communications. — A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

(1) the transmission of the material was initiated by or at the direction of a person other than the service provider;

(2) the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

(3) the service provider does not select the recipients of the material except as an automatic response to the request of another person;

(4) no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

(5) the material is transmitted through the system or network without modification of its content.

(b) System Caching. —

(1) Limitation on liability. — A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the intermediate

and temporary storage of material on a system or network controlled or operated by or for the service provider in a case in which—

    (A) the material is made available online by a person other than the service provider;

    (B) the material is transmitted from the person described in subparagraph (A) through the system or network to a person other than the person described in subparagraph (A) at the direction of that other person; and

    (C) the storage is carried out through an automatic technical process for the purpose of making the material available to users of the system or network who, after the material is transmitted as described in subparagraph (B), request access to the material from the person described in subparagraph (A), if the conditions set forth in paragraph (2) are met.

(2) Conditions.—The conditions referred to in paragraph (1) are that—

    (A) the material described in paragraph (1) is transmitted to the subsequent users described in paragraph (1)(C) without modification to its content from the manner in which the material was transmitted from the person described in paragraph (1)(A);

    (B) the service provider described in paragraph (1) complies with rules concerning the refreshing, reloading, or other updating of the material when specified by the person making the material available online in accordance with a generally accepted industry standard data communications protocol for the system or network through which that person makes the material available, except that this subparagraph applies only if those rules are not used by the person described in paragraph (1)(A) to prevent or unreasonably impair the intermediate storage to which this subsection applies;

    (C) the service provider does not interfere with the ability of technology associated with the material to return to the person described in paragraph (1)(A) the information that would have been available to that person if the material had been obtained by the subsequent users described in paragraph (1)(C) directly from that person, except that this subparagraph applies only if that technology—

        (i) does not significantly interfere with the performance of the provider's system or network or with the intermediate storage of the material;

        (ii) is consistent with generally accepted industry standard communications protocols; and

        (iii) does not extract information from the provider's system or network other than the information that would have been available to the person described in paragraph (1)(A) if the subsequent users had gained access to the material directly from that person;

    (D) if the person described in paragraph (1)(A) has in effect a condition that a person must meet prior to having access to the material, such as a

From: Meetup <info@meetup.com>
Subject: **Welcome to South Jersey Business Networking Group!**
Date: April 6, 2011 11:42:46 AM EDT
To: bruce@dxine.net
Return-Path: <info@meetup.com>
Envelope-To: bruce@dxine.net
Delivery-Date: Wed, 06 Apr 2011 21:21:08 -0600
Received: from dxinenet by box512.bluehost.com with local-bsmtp (Exim 4.69) (envelope-from <info@meetup.com>) id 1Q7fmN-0001bD-AR for bruce@dxine.net; Wed, 06 Apr 2011 21:21:08 -0600
Received: from exprod7mo105.postini.com ([64.18.2.207]) by box512.bluehost.com with esmtps (TLSv1:AES256-SHA:256) (Exim 4.69) (envelope-from <info@meetup.com>) id 1Q7fmN-0001af-0a for bruce@dxine.net; Wed, 06 Apr 2011 21:21:07 -0600
Received: from exprod7mc124.postini.com (exprod7mc124.postini.com [64.18.2.72]) by exprod7mo105.postini.com (Postfix) with SMTP id 87BC54E9EB1 for <bruce@dxine.net>; Wed, 6 Apr 2011 20:21:06 -0700 (PDT)
Received: from mail2.meetup.com ([64.90.170.32]) by exprod7mx206.postini.com ([64.18.6.14]) with SMTP; Wed, 06 Apr 2011 11:42:47 EDT
Received: from web16.meetup.com (192.168.60.156) by mail2.meetup.com (PowerMTA(TM) v3.5r6) id hji4ve0l1joq for <bruce@dxine.net>; Wed, 6 Apr 2011 11:42:46 -0400 (envelope-from <info@meetup.com>)
X-Spam-Checker-Version: SpamAssassin 3.3.0 (2010-01-18) on box512.bluehost.com
X-Spam-Level:
X-Spam-Status: No, score=-2.3 required=5.0 tests=HTML_MESSAGE, RCVD_IN_DNSWL_MED,SPF_PASS shortcircuit=no autolearn=unavailable version=3.3.0
Domainkey-Signature: a=rsa-sha1; c=nofws; q=dns; s=meetup; d=meetup.com; b=XF0FuEl6V8/jhPJXgoCEnCqDadus34aXZcqBJBipprBcpw0IJzn5hquhY3QHedBuWRgAqx5GMk6z nVDaNyi3QU/QnBfQ01mxUFYsJonjstN4Ac1cuvtOcuK5EdnQe6EIHX5HnHTOyqdHwucJD5yX4gsU CF5wXphULSVKIXWfLDI=;
Message-Id: <913032521.1302104566754.JavaMail.nobody@web16.meetup.com>
Mime-Version: 1.0
Content-Type: multipart/alternative; boundary="----=_Part_2326_616784356.1302104566753"
X-Meetup-Mesg-Id: 333428564
X-Meetup-Recip-Id: 13417959
X-Meetup-Track: wm1
X-Pstn-Neptune: 0/0/0.00/0
X-Pstn-Levels: (S: 0.26318/99.35207 CV:99.9000 FC:95.5390 LC:95.5390 R:95.9108 P:95.9108 M:95.5423 C:98.6951 )
X-Pstn-Settings: 4 (1.5000:1.5000) s cv gt3 gt2 gt1 r p m c
X-Pstn-Addresses: from <info@meetup.com> [536/20]
X-Pstn-Disposition: quarantine
X-Identified-User: {1938:box512.bluehost.com:dxinenet:dxine.net} {sentby:spamassassin for local delivery to identified user}

# Welcome, Bruce Aristeo!



You're a member of
## South Jersey Business Networking Group

Thank you for joining our group



Andrew Young

**Visit your new Meetup Group →**

More Meetups:
2 upcoming Meetups



EXHIBIT 8

*EVENT WAS ON THE ZONE*

*TAKEN 5/22/11.*

Chrome File Edit View History Bookmarks Window Help

New Tab

South Jersey Business Netw...

www.meetup.com/southjerseymeetup/

Buy/Sell | College | Financial | MacUpdate | Movies | NPR | Ship | Web Stuff | NJfire | MAXTOR | HubSpot | Marketing Tools | UIBC | Grasshopper | Other Bookmarks

Bruce Aristeo   My Groups ▾  Account ▾  Log out

Meetup   Find   Start   Sponsor

# South Jersey Business Networking Group

Home   Members   Sponsors   Photos   Pages   Discussions   More ▾

Join us!

## This group's content is available only to members

### Welcome! Join NOW!

South Jersey Business Networking Group is only for serious business professionals. Our group is designed to help you grow your business through the power of building relationships. SJBNG hosts various events geared towards helping you build your business.

Our events are a great platform for you to promote your services/products, meet new business professionals and build your network that will help you achieve your goals.

This group is GREAT for Business Owners, Managers and Professionals alike.

Learn more about this Meetup Group

Check out Our Sponsors and Perks.

**What members are saying!**

" Any group involving Andrew Young is always good! "

--Meetup Group member

## You are prohibited by the Organizer from joining this Meetup Group.

" Andrew got out the shock paddles and brought this group back to life. "

--Meetup Group member

Sicklerville, NJ
Founded Feb 11, 2008

Professional Networkers          177

Group reviews               15

Upcoming Meetups          2

Past Meetups                 23

Organizers:
Andrew Young, Bill
Silverman, Dawn
Wolfe, Josh

Members can add Meetups

Contact us

### Sponsors and Perks



TruBlu

Event Sponsor

From: Bruce Aristeo <bruce@ab2bc.net>
Subject: **Being Asked to Not Attend**
Date: March 28, 2011 5:21:23 PM EDT
To: art@camdencountychamber.com



Dear Arthur C. Campbell,

Thank you for calling me back today, you were very professional and most of all understanding. Please accept my apologies for documenting our conversation, my only intension is to protect myself from Jody Raines and her attempts at harassment. I honorably chose not to attend based on your request, and because I have no intention to cause discomfort to panelists or to disrupt your presentation.

My request:
Please reply to this email with the reasons and details that Jody Raines has discussed with you to cause the request for me not to attend. This is so that I have documentation of what transpired. In addition, please include my reply to you and my willingness to honor your request.

I suggest that a copy of the email also be sent to Ms. Raines.

Thank you for your understanding and I'm sad that you were forced in the middle of this issue.
Bruce Aristeo

• • • • • • • •

I received a call today from Rita Owens at approximately 1:28PM on 3/28/11 stating that my attendance fee for the Panel Presentation: Social Networking From the Experts was refunded and that you asked me NOT to attend.

I told Rita that I would appreciate a call from you to understand what the issue is. I have an inbound marketing business and wish to network and promote my business through the chamber. I find it very disturbing that I was asked not to attend.

• • • • • • • •

Bruce Aristeo
bruce@ab2bc.net
856.261.4543 (mobile)

www.ab2bc.net
Social Media Marketing - Internet Marketing - Web Design

*EXHIBIT 9*

From: "Art Campbell" <art@camdencountychamber com>
Subject: **RE: Being Asked to Not Attend**
Date: March 29, 2011 12:19:39 PM EDT
To: '"Bruce Aristeo" <bruce@ab2bc.net>
Return-Path: <art@camdencountychamber.com>
Envelope-To: bruce@ab2bc.net
Delivery-Date: Tue, 29 Mar 2011 10:20:33 -0600
Received: from dxinenet by box512.bluehost.com with local-bsmtp (Exim 4.69) (envelope-from <art@camdencountychamber.com>) id 1Q4beV-0002IS-H2 for bruce@ab2bc.net; Tue, 29 Mar 2011 10:20:32 -0600
Received: from mx5.wwwcomm.com ([208.112.53.236] helo=mx1.wwwcomm.com) by box512.bluehost.com with esmtp (Exim 4.69) (envelope-from <art@camdencountychamber.com>) id 1Q4beU-0002je-PL for bruce@ab2bc.net; Tue, 29 Mar 2011 10:20:19 -0600
Received: from 74-92-104-105-Philadelphia.hfc.comcastbusiness.net [74.92.104.105] by mx1.wwwcomm.com with SMTP; Tue, 29 Mar 2011 12:23:37 -0400
X-Spam-Checker-Version: SpamAssassin 3.3.0 (2010-01-18) on box512.bluehost.com
X-Spam-Level:
X-Spam-Status: No, score=0.1 required=5.0 tests=MISSING_MID shortcircuit=no autolearn=no version=3.3.0
Mime-Version: 1.0
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: 7bit
X-Mailer: Microsoft Office Outlook, Build 11.0.5510
X-Mimeole: Produced By Microsoft MimeOLE V6.00.2900.5994
In-Reply-To: <5BC98826-4B38-4F67-B3C7-6B06DE34A9C2@ab2bc.net>
Thread-Index: Acvtj6Qiq/YDI7R3S0+nUcZoNUeg4gAmeo9A
Message-Id: <E1Q4beV-0002IS-H2@box512 bluehost.com>
X-Identified-User: {1938:box512.bluehost.com:dxinenet:dxine.net} {sentby:spamassassin for local delivery to identified user}

Dear Bruce'
Thank you for agreeing not to attend today's Social Networking Presentation.
As I indicated in our telephone conversation yesterday, one of our 4
panelists-Jody Raines-had indicated that because of issues that existed
between you and her; your presence at the event would cause her enough
distress that she would be unable to present as a panelist.

My request that you reconsider attending was made out of concern for the
conduct of an event that advertised 4 panelists and the expectations of the
other attendees that we were presenting what we offered.

The request was not intended to restrict your ability to attend events as a
member or in any way restrict your access to full member benefits.

I had instructed my registration staff last evening to admit you and a guest
at the pre-registration price if you did decide to attend.

Your decision to defer attending is appreciated.

Sincerely,
Art Campbell
President/CEO
Camden County Regional Chamber of Commerce

-----Original Message-----
From: Bruce Aristeo [mailto:bruce@ab2bc.net]
Sent: Monday, March 28, 2011 5:21 PM
To: art@camdencountychamber.com
Subject: Being Asked to Not Attend

Dear Arthur C. Campbell,

Thank you for calling me back today, you were very professional and most of
all understanding. Please accept my apologies for documenting our
conversation, my only intension is to protect myself from Jody Raines and
her attempts at harassment. I honorably chose not to attend based on your
request, and because I have no intention to cause discomfort to panelists or
to disrupt your presentation.

From: "LinkedIn Customer Support"  <linkedin_support@cs.linkedin.com>
Subject: **Sorry you are not authorized to perform this action. [Ticket: 110504-001932]**
Date: May 6, 2011 2:56:36 PM EDT
To: bruce@ab2bc.net
Reply-To: "LinkedIn Customer Support"  <linkedin_support@cs.linkedin.com>

# LinkedIn Customer Support Message

**Subject: Sorry you are not authorized to perform this action.**

Hi Bruce,

Unfortunately, it appears you may have been rejected from the group. The group owners and managers have the right to monitor group discussions and to make their own membership decisions. If you are not authorized to rejoin the group you may want to search the Group Directory and find similar groups that will appreciate your membership and participation.

If you have any other questions please do let us know.

Regards,

Katie
LinkedIn Customer Service

**Original Contact:**

**Member Comment: Bruce Aristeo**                                              05/04/2011 10:37

Hello,

I have received this message for a group I was waiting to join.

Camden County Regional Chamber of Commerce
Sorry you are not authorized to perform this action.

Can you please help me to understand why I have received this message?

Thank You,
Bruce

**?** Would you like to learn more about how to harness the knowledge and expertise of your network?
Find training resources on the LinkedIn Learning Center or browse FAQs on the LinkedIn Customer Service Center.
Check out New on LinkedIn or follow us on Twitter®.

LinkedIn values your privacy. At no time has LinkedIn made your email address available to any other LinkedIn user without your permission.
LinkedIn Corporation © 2011 | Privacy Policy | User Agreement | Copyright Policy



From: Bruce Aristeo <bruce@ab2bc.net>
Subject: Re: LInked In
Date: May 7, 2011 8:49:19 AM EDT
To: "Art Campbell" <art@camdencountychamber.com>
Mime-Version: 1.0 (Apple Message framework v1084)
Content-Type: multipart/alternative; boundary=Apple-Mail-6-47845077
X-Smtp-Server: mail.ab2bc.net:bruce@ab2bc.net
X-Universally-Unique-Identifier: eaeff4fe-d406-4523-8f82-285497b2251a
In-Reply-To: <E1QINoh-0001xn-3O@box512.bluehost.com>
References: <E1QINoh-0001xn-3O@box512.bluehost.com>
Message-Id: <4AD219FE-0D0C-456F-8936-60AEF3B43FFA@ab2bc.net>

Hello Art,

For update purposes only...

I am still waiting to be accepted and the status is that I am not approved to join the group as of Saturday 5/07/11.

Thank you for your help in this matter,
Bruce Aristeo

....
Thank you Art, I'll keep an eye out.

Be Well,

Bruce Aristeo
bruce@ab2bc.net
800.806.7784 ext.700 (office)
856.261.4543 (mobile)

Social Media Marketing - Internet Marketing - Web Design
CONNECTING YOUR MARKET TO YOU

www.ab2bc.net
facebook.com/ab2bc
twitter.com/ab2bc
linkedin.com/company/ab2bc.net
youtube.com/ab2bcnet

facebook.com/brucearisteo
twitter.com/brucearisteo
linkedin.com/in/brucearisteo


On May 6, 2011, at 12:23 PM, Art Campbell wrote:

Keep me posted if it doesn't clear you.

Art

_____

From: Bruce Aristeo [mailto:bruce@ab2bc.net]
Sent: Friday, May 06, 2011 12:11 PM
To: Art Campbell
Subject: Re: Linked In

Hi Art,

I cleared my browser and the group message states the following - Status: Your membership is pending approval

This is a better than the blocked message. I might have to wait some time before being reaccepted after being blocked.

| | |
|---|---|
| From: | "Art Campbell" <art@camdencountychamber.com> |
| Subject: | **Linked In** |
| Date: | May 6, 2011 11:49:09 AM EDT |
| To: | "'Bruce Aristeo'" <bruce@ab2bc.net> |
| Return-Path: | <art@camdencountychamber.com> |
| Envelope-To: | bruce@ab2bc.net |
| Delivery-Date: | Fri, 06 May 2011 09:49:52 -0600 |
| Received: | from dxinenet by box512.bluehost.com with local-bsmtp (Exim 4.69) (envelope-from <art@camdencountychamber.com>) id 1QINHr-00015T-7k for bruce@ab2bc.net; Fri, 06 May 2011 09:49:52 -0600 |
| Received: | from mx5.wwwcomm.com ([208.112.53.236] helo=mx1.wwwcomm.com) by box512.bluehost.com with esmtp (Exim 4.69) (envelope-from <art@camdencountychamber.com>) id 1QINHq-00014E-MW for bruce@ab2bc.net; Fri, 06 May 2011 09:49:51 -0600 |
| Received: | from 74-92-104-105-Philadelphia.hfc.comcastbusiness.net [74.92.104.105] by mx1.wwwcomm.com with SMTP; Fri, 6 May 2011 11:53:33 -0400 |
| X-Spam-Checker-Version: | SpamAssassin 3.3.0 (2010-01-18) on box512.bluehost.com |
| X-Spam-Level: | |
| X-Spam-Status: | No, score=0.1 required=5.0 tests=HTML_MESSAGE,MISSING_MID shortcircuit=no autolearn=no version=3.3.0 |
| Mime-Version: | 1.0 |
| Content-Type: | multipart/alternative; boundary="----=_NextPart_000_0104_01CC0BE3.9CD5F0D0" |
| X-Mailer: | Microsoft Office Outlook, Build 11.0.5510 |
| Thread-Index: | AcwMBSOW1e354WU+SnaEPixOnOeAIA== |
| X-Mimeole: | Produced By Microsoft MimeOLE V6.00.2900.6090 |
| Message-Id: | <E1QINHr-00015T-7k@box512.bluehost.com> |
| X-Identified-User: | {1938:box512.bluehost.com:dxinenet:dxine.net} {sentby:spamassassin for local delivery to identified user} |

You should be 'unblocked' now.  Please test it and let me know.

Thanks,
Art

Chrome   File   Edit   View   History   Bookmarks   Window   Help

Acer 10.1 - Google Search   Camden County Regional C
www.linkedin.com/groups?gid=1891469&mostPopular=&trk=tyah
Buy/Sell   College   Financial   MacUpdate   Movies   Web Stuff   NPR   Ship   NJHire   Movies   MAXTOR
(100%) Fri May 6  11 17 AM
Other Bookmarks

Linked**in**®   Account Type: Basic

Home   Profile   Contacts   Groups   Jobs   Inbox   Companies   News   More

HubSpot   Marketing Tools   Groups ▾   • Bruce Arrioso   Add Connections

Camden County Regional Chamber of Commerce

CCRCC is a regional Chamber and one of the five largest in the entire Delaware Valley. Our organization serves businesses in New Jersey, Pennsylvania, Delaware, and Maryland, with the largest core membership in Camden, Burlington, and Gloucester Counties, NJ.

**Join Group**        Share group   Report as

## Group Members in Your Network

**Art Campbell**
President Camden County Regional Chamber of Commerce
(1st)

**gladys glass**
partner at Woodstock Trading Company
(2nd)

**Tim Malcarney**
Principal at Prime AV Solutions
(1st)

**E J Paul**
SEO | Lead Generation | Search Engine Optimization | Search Engine Marketing | Internet Marketing | SEO Marketing Firm
(2nd)

**Eric M. Stofman, DC, FICPA**
Author of You Are Not Your Diagnosis...and other lessons I learned from my father
(2nd)

**Arlene Litvin**
Owner at Pinklady101
(2nd)

**Matthew Dopkin**
CPA and Attorney licensed in PA & NJ
(2nd)

**Timothy Dickinson, CPA**
Accounting Professional/Business Owner
(2nd)

### About this Group

Created: April 8, 2009
Type: Professional Group
Members: 192

**Owner:** Art Campbell
**Managers:** Jody Raines

**Website:**
http://www.camdencountychamber.com



Camden County Regional C...

← C ↑ ⓘ www.linkedin.com/groups?gid=1891145&mostPopular=&trk=myah

Bkm D  V  ⓘ  DS  RS  AAN  UM  GB  GP  SCC  CHCC  CHCJ  CS  CCAG  daN  Vap  Other bookmarks

# Linked in®  Account Type: Basic

Home  Profile  Contacts  Groups  Jobs  Inbox  Companies  News  More

▾ Gene Mocuba   **Add Connections**

## ⊞ Camden County Regional Chamber of Commerce

Groups ▾

CCRCC is a regional Chamber and one of the five largest in the entire Delaware Valley. Our organization serves businesses in New Jersey, Pennsylvania, Delaware, and Maryland, with the largest core membership in Camden, Burlington, and Gloucester Counties, NJ.

Join Group    ⟲ Share group   ! Report as...

### About this Group

**Created:** April 8, 2009
**Type:** Professional Group
**Members:** 189

**Owner:** Art Campbell
**Managers:** Jody Raines

**Website:**
http://www.camdencountychamber.com

## Group Members in Your Network

**Jody Raines**
President at WebMarCom
(1st)

**gladys glass**
partner at Woodstock Trading Company
(2nd)

**Jeffrey Grimley**
General Manager at J. Cwanger, Inc.
(2nd)

**Matthew Donkin**
CPA and Attorney licensed in PA & NJ
(2nd)

**Rita Owens**
Camden CountyRegional Chamber of Commerce
(2nd)

**Fred Estrella**
at Aflac
(2nd)

**Anthony Greenfield**
ceo at ansercomm

---

**Date and Time Properties**

Date & Time | Time Zone

Date

May ▾  2011 ▾

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | **4** | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

Time

11:09:03 AM

Current time zone: Eastern Daylight Time

OK   Cancel

Current time zone: Eastern Daylight Time

⊞ start    Wednesday, May 04, 2011

11:09 AM

